**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DAWN BRANCH**

   **Plaintiff,**

 **v.**

**CVS PHARMACY, INC.**

   **Defendant.**

**CIVIL NO. 2:22-CV-00641**

## COMPLAINT

 Plaintiff Dawn Branch asserts her causes of action against defendant CVS Pharmacy, Inc. as follows:

### THE PARTIES

1. Plaintiff is Dawn Branch, in both her individual and representative capacities, who is a person of majority, currently domiciled in Louisiana and residing in St. Tammany Parish.

2. Defendant is CVS Pharmacy, Inc. ("CVS"), a foreign corporation incorporated and headquartered in Rhode Island, and which, upon information and belief, is registered and actively doing business in Louisiana.

### JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 206 (the Fair Labor Standards Act minimum wage provisions); § 207 (FLSA overtime wage provision); and § 216 (FLSA collective action provisions) as more particularly set-out herein.

4. The Court has supplemental, subject-matter jurisdiction over Ms. Branch's Louisiana state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to her

federal law claims that they form part of the same case or controversy as more particularly set-out herein.

5.      The Court has personal jurisdiction over CVS Pharmacy Inc. because it is a foreign corporation registered and actively doing business in Louisiana, and, through its registered agent for the service of process, C T Corporation System, is present within Louisiana at the time this suit commenced.

6.      Alternatively, the Court has personal jurisdiction over CVS Pharmacy Inc. because, upon information and belief, it regularly transacts business in Louisiana; regularly employs Louisiana citizens; derives substantial revenue from the services it provides in Louisiana; committed the unlawful acts in Louisiana that injured Ms. Branch in this case; and committed the unlawful acts in Louisiana otherwise giving rise to the causes of action in this case.  Thus, CVS Pharmacy Inc. has established minimum specific contacts with Louisiana, arising from the facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

7.      Venue for Ms. Branch's FLSA and state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the parties contracted for Ms. Branch's employment and engaged in the FLSA and state-law wage violations alleged in this matter in this judicial district (specifically, St. Tammany Parish), and Ms. Branch's resulting harm was suffered in this judicial district (same).

**PROCEDURAL AND STATUTORY ALLEGATIONS**

8.      At all times, CVS was engaged in interstate commerce by buying medicines and other consumer goods from outside of Louisiana, then shipping those goods to Louisiana, then selling those goods from its Louisiana pharmacies, including the pharmacy Ms. Branch was employed at, to both customers located inside and outside of Louisiana.

9.      In both 2020 and 2021, CVS earned total revenues greater than $500,000.

10.     On or about June 2020, CVS hired Ms. Branch as its full-time employee in the position of "staff pharmacist."

11.     At all times, Ms. Branch in her position of staff pharmacist regularly engaged in interstate commerce by, among other things, regularly receiving, accounting for, and dispensing medicines which had been shipped in interstate travel to customers in Louisiana; by regularly accessing CVS computer systems connected to other systems located outside of Louisiana; and by regularly making phone calls to or communicating with people outside of Louisiana.

12.     Upon information and belief, Ms. Branch's position of "staff pharmacist" is a specific job title utilized by CVS pharmacy across its entire pharmacy workforce in Louisiana.

13.     Upon information and belief, a "staff pharmacist" employed by CVS pharmacy has the same job description and job responsibilities as any other staff pharmacist employed in Louisiana.

14.     Upon information and belief, and as further alleged below, all "staff pharmacists" located in Louisiana are similarly situated with respect to CVS's obligation to pay those pharmacists minimum wage and overtime wages under the FLSA.

15.     At all times, Ms. Branch was assigned to CVS's Louisiana Pharmacy 05451 located in Franklinton, Louisiana.

16.     Ms. Branch was continuously employed by CVS until her constructive discharge on or about June 4, 2021.

17.     At all times, CVS classified Ms. Branch as its employee.

18.     At all times, CVS paid Ms. Branch on an hourly basis (not on a salary basis).

19.     At all times, CVS paid Ms. Branch approximately $56.28 per hour.

20.     At all times, Ms. Branch was entitled to overtime wages for all hours worked in a week

greater than 40, except that CVS misclassified Ms. Branch as an exempt employee ineligible for overtime wages under the FLSA.

21.     At all times, upon information and belief, CVS did not guarantee Ms. Branch any minimum pay on a weekly or less frequent basis.

22.     Alternatively, upon information and belief, CVS guaranteed Ms. Branch some minimum pay on a weekly or less frequent basis, but that guaranteed pay was no greater than $684 per week.

23.     Alternatively, upon information and belief, CVS guaranteed Ms. Branch some minimum pay on a weekly or less frequent basis, but that guaranteed pay was not reasonably related to her actual weekly pay.

24.     Specifically, Ms. Branch earned at on average, approximately, $2,100.00 in hourly wages per week based on the number of hours she actually worked.

25.     Upon information and belief, whatever minimum pay CVS guaranteed Ms. Branch was significantly less than her weekly earnings, and had no reasonable relationship to her weekly earnings, such that the minimum guarantee was merely a sham to avoid overtime pay requirements under federal law.

26.     Upon information and belief, all of CVS's staff pharmacists located in Louisiana were – just like Ms. Branch – classified as exempt employees; paid an hourly rate (and not on a salary basis); not paid for more than 37.5 hours per week regardless of how many more hours the pharmacist worked during the week; and either not guaranteed any minimum salary, or guaranteed a minimum salary that had no reasonable relationship to the employee's actual, weekly earnings.

27.     To the best of recollection and belief, Ms. Branch always worked more than 40 hours per week, usually, approximately, at least 45 hours per week.

28.     Nevertheless, CVS never paid Ms. Branch for more than 37.50 work hours per week.

29.     Upon information and belief, CVS unlawfully and intentionally failed to pay Ms. Branch overtime wages she was due for working more than 40 hours during any given workweek (FLSA).

30.     On or about June 4, 2021, Ms. Branch was constructively discharged and resigned from her employment.

31.     At the time of her constructive discharge, upon information and belief, Ms. Branch had unused vacation time which she was owed.

32.     At the time of her constructive discharge, upon information and belief, Ms. Branch had unpaid wages that she was owed.

33.     Upon information and belief, CVS unlawfully and intentionally failed to pay Ms. Branch for all her accrued vacation time and paid leave of absence time within two weeks of her termination.

34.     After her constructive discharge, Ms. Branch gave written and other notice to CVS that she was owed unpaid wages and vacation leave, but to date CVS has not fully paid Ms. Branch these amounts.

35.     Upon information and belief, CVS unlawfully and intentionally continues to refuse to pay Ms. Branch for her unpaid wages and vacation leave to date.

**FACTS**

**A.    The Plaintiff — Dawn Branch**

36.     Dawn Branch is a 49-year-old woman living with her husband and children in Bush, Louisiana.

37.     Ms. Branch is a pharmacist licensed to practice in Louisiana.

38.     Ms. Branch relies on her income and work as a pharmacist to support her family.

B.      **The Defendant — CVS Pharmacy Inc.**

39.     CVS Pharmacy Inc. is a corporation incorporated and headquartered in Rhode Island.

40.     CVS operates an international chain of drugstores and pharmacies and maintains approximately close to 10,000 retail locations worldwide.

41.     CVS employs many thousands of people worldwide.

42.     CVS is registered in Louisiana and has appointed an agent for service of process in Louisiana.

43.     CVS maintains many stores and pharmacies in Louisiana.

44.     CVS employs many workers in Louisiana.

45.     CVS employs many staff pharmacists in Louisiana.

46.     Upon information and belief, the most common job title assigned to any of its pharmacist employees assigned to any retail pharmacy is "staff pharmacist."

47.     A "staff pharmacist" is not expected to manage other pharmacists assigned to a retail pharmacy.

48.     Instead, CVS employs other pharmacists in the position of "Pharmacy Managers" who exercise that supervisory responsibility.

49.     During the relevant times in this case, CVS employed Ms. Branch as a pharmacist and assigned her to its Store 5451 in Franklinton, Louisiana.

50.     At all times relevant to this case, Ms. Branch's direct supervisor was Justin Fox, the Pharmacy Manager of Store 5451.

51.     At all times relevant to this case, Ms. Branch's second level supervisor was Stacy Polito, the District Manager of Store 5451 and other CVS locations located throughout Louisiana.

**C.     CVS Misclassified Ms. Branch as an Exempt Employee and Failed to Pay Her Minimum Wages and Overtime Wages**

52.     Upon information and belief, CVS classified Ms. Branch as an "exempt" employee for purposes of overtime pay obligations under the FLSA.

53.     In reality, upon information and belief, Ms. Branch was really a non-exempt worker who CVS misclassified as "exempt."

54.     CVS indicated to Ms. Branch that she was paid a "salary" for her work.

55.     In reality, upon information and belief, Ms. Branch was not a salaried worker, and CVS paid her an hourly rate for her work with no guaranteed minimum salary per week.

56.     Specifically, CVS actually paid Ms. Branch the rate of $56.28 for every hour that she worked.

57.     Ms. Branch's pay stubs issued by CVS confirmed she was paid at the rate of $56.28 per hour.

58.     CVS paid Ms. Branch this hourly rate for each hour of work she performed during the week up to a maximum of 37.5 hours in a week.

59.     After working 37.5 hours in a week, CVS did not pay Ms. Branch any wages no matter how many extra hours she worked.

60.     But during weeks in which Ms. Branch worked less than 37.5 hours, CVS only paid Ms. Branch for those hours she worked.

61.     For instance, for the pay period ending on May 29, 2021, Ms. Branch only worked 19.5 hours, and CVS only paid Ms. Branch for those hours.

62.     Overall, based on CVS's pay policies, Ms. Branch earned approximately $76,031.88 in gross wages in 2020.

63.     Overall, based on CVS's pay policies, Ms. Branch earned approximately $44,349.91 in

gross wages in 2021.

64.     Overall, based on CVS's pay policies, had Ms. Branch continued to work for all of 2021, she expected to earn approximately $105,115.04 in gross wages and compensation.

65.     Upon information and belief, Ms. Branch worked more than 40 hours per week almost every week while she was employed by CVS.

66.     Upon information and belief, Ms. Branch averaged approximately 45 hours of work per week almost every week she was employed by CVS pharmacy.

67.     Upon information and belief, Ms. Branch was never paid for any amount of overtime, no matter how many hours she worked in excess of 40 hours a week.

68.     Upon information and belief, CVS intentionally and unlawfully failed to pay Ms. Branch for the overtime she accrued during her entire career with CVS.

69.     Upon information and belief, CVS purposefully misclassified Ms. Branch as an "exempt" worker specifically to avoid its overtime obligations under the FLSA.

70.     Upon information and belief, CVS had no good-faith basis for its misclassification.

71.     In total, during her entire full-time employment with CVS from June 2020 through June 4, 2021, Ms. Branch worked approximately 52 weeks.

72.     Upon information and belief, working approximately 45 hours per week almost every week during her employment, CVS failed to pay Ms. Branch for at least 255 hours of overtime pay during her employment.

73.     At the time-and-a-half rate of $84.42 per hour, upon information and belief CVS owes Ms. Branch at least $21,527.10 in unpaid overtime wages.

74.     Further, upon information and belief, to the extent CVS also failed to pay Ms. Branch any wages at all for the 2.5 hours of work between 37.5 and 40 hours per week she almost always

worked, CVS failed to pay Ms. Branch approximately 145 hours of regular pay during her employment.

75.     At the regular rate of $56.28 per hour, upon information and belief, CVS owes Ms. Branch at least an additional, approximate $7,175.70 in unpaid regular wages.

**D.     Ms. Branch Is Similarly Situated to All CVS Staff Pharmacists Employed in Louisiana**

76.     Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana for purposes of vindicating both her and their right to receive both minimum and overtime wages under the FLSA.

77.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because upon information and belief CVS gives all its staff pharmacists substantially identical job descriptions, responsibilities, and duties.

78.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because upon information and belief CVS misclassifies all of their staff pharmacists as exempt from both minimum and overtime wages under the FLSA.

79.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because upon information and belief CVS pays all of their staff pharmacists on an hourly rate (not on a salary basis).

80.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because upon information and belief CVS does not pay its staff pharmacists for any hours worked during the week greater than 37.5.

81.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because upon information and belief all CVS staff pharmacists regularly work more than 40 hours per week.

82.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because upon information and belief CVS does not pay its staff pharmacists for the minimum and overtime wages they are owed.

83.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because upon information and belief CVS does not pay its staff pharmacists any guaranteed salary at all; or, if any such salary is paid, the salary has no reasonable relationship to the actual amount of wages the staff pharmacist earns per week.

84.     Specifically, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because – given that CVS does not pay any of its staff pharmacists on a salary basis – the so-called "professional exemption" of the FLSA does not apply to Ms. Branch or any other staff pharmacist as a matter of law.   *See* 29 C.F.R. § 541.600(a) (requiring employer to pay professional employee on a "salary basis" to claim the exemption); *and also* 29 C.F.R. § 541.600(e) (providing that licensed pharmacists are not the sort of "medical occupation" that may be paid on an hourly rate and still claim the "professional" exemption).

85.     In other words, Ms. Branch is similarly situated to all other CVS staff pharmacists employed in Louisiana because the only two differences between the compensation Ms. Branch is owed versus what each of her similarly-situated peers is owed is (1) the specific hourly rate paid to each pharmacist, and (2) the number of hours each pharmacist worked (but was not paid for) each week.

**E.      CVS Has No Good-Faith Basis for Its Misclassification and Failure to Pay Required Minimum and Overtime Wages under the FLSA**

86.     Upon information and belief, and at all relevant times in this matter, CVS knew that its Louisiana staff pharmacists were not exempt under the FLSA's minimum and overtime wages provisions, yet CVS continued to misclassify its staff pharmacists and refused to pay them their

owed minimum and overtime wages.

87.     Upon information and belief, CVS has no good-faith basis for believing its Louisiana staff pharmacists were exempt under the FLSA's minimum and overtime wages provisions, nor that CVS did not owe them their earned, minimum and overtime wages.

**F.     CVS Failed to Pay Ms. Branch Accrued, Paid Vacation Leave at the Time of Her Constructive Discharge**

88.     Additionally, upon information and belief, during Ms. Branch's employment, CVS maintained a paid vacation policy for its staff pharmacists.

89.     Upon information and belief, that policy, relevant here, provided Ms. Branch with up to 150 hours of vacation time, every year beginning on January 1, that accrued incrementally every day for the entire calendar year, culminating in 150 hours of leave as of December 31.

90.     Upon information and belief, pursuant to that policy, CVS awarded Ms. Branch 150 hours of paid vacation leave on January 1, 2021 on a daily, accruing basis.

91.     Upon information and belief, Ms. Branch used minimal or no vacation time in 2021.

92.     Upon information and belief, Ms. Branch had approximately 64.50 hours of accrued vacation time (and an additional 8 hours of paid vacation time known as "Holiday Float" that was also awarded to Ms. Branch per CVS policy) at the time of her constructive discharge on or about June 4, 2021.

93.     Upon information and belief, Ms. Branch eventually received a final paystub that indicated that her accrued but unpaid balance of vacation time was 64.50 hours, with an additional unpaid balance of 8 hours of "Holiday Float."

94.     Thirteen days after her constructive discharge, on June 17, 2021, Ms. Branch contacted CVS's corporate office to complain about her unpaid vacation leave.

95.     A CVS "Advice and Counsel" employee from its corporate office indicated to Ms. Branch that the CVS employees who could resolve her complaint were Mr. Fox and Ms. Polito, but that the two would not return phone calls or emails from the corporate office regarding the issue.

96.     Ms. Branch followed up with CVS's corporate office again on or about June 21, 2021, and the "Advice and Counsel" employee continued to indicate that Mr. Fox and Ms. Polito were not responsive to the corporate office's requests.

97.     Thereafter, Ms. Branch sent a formal, written demand for all her unpaid wages and vacation leave via email and U.S. postal service priority mail to Ms. Polito dated June 21, 2021.

98.     Ms. Branch copied CVS's corporate office to her email to Ms. Politio.

99.     In her correspondence, Ms. Branch demanded payment of her unpaid vacation leave Holiday Float time, and other unpaid money owed.

100.    On June 24, 2021, Ms. Branch made a formal complaint via CVS's "Ethics Point" online portal stating that she had still not received payment for her unpaid and owed leave.

101.    On July 3, 2021, Ms. Branch received a pay stub from CVS dated July 1, 2021, indicating an additional payment of 27 hours of unpaid vacation time.

102.    Ms. Branch never received any indication, explanation, or notice as to how or why CVS had determined or decided to pay her for 27 hours of unpaid leave but did not pay the remaining 45.5 hours of combined vacation and Holiday Float leave.

103.    To date, CVS still fails to pay Ms. Branch for these accrued but unpaid 45.5 hours of combined leave.

104.    Upon information and belief, at the rate of $56.28 per hour for each hour of unpaid vacation or other leave, CVS owes Ms. Branch at least $2,560.74 in unpaid leave wages.

## CAUSES OF ACTION

**A.    Unlawful Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act against CVS (Individual Claim)**

105.    Ms. Branch states an individual cause of action for unlawful failure to pay overtime wages against CVS under the Fair Labor Standards Act.

106.    Under the Fair Labor Standards Act, a covered employer is required to pay an hourly employee overtime wages at the rate of 1.5 times the employee's regular rate of pay for each hour over 40 worked in a weekly pay period.  29 U.S.C. § 207(a) *et seq.*  An employer who fails to pay an employee 1.5 times her regular rate of pay for each overtime hour worked owes the employee the lost value of these unpaid wages, doubled as liquidated damages unless the employer proves it acted in good faith.  *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (citing 29 U.S.C. § 216(b) (regarding overtime wages specifically).

107.    Here, there is no question that CVS is a covered employer under so-called "enterprise coverage" because CVS took in more than $500,000 in revenue during the years of Ms. Branch's employment.  In the alternative, Ms. Branch is a "covered employee" because she engaged in interstate commerce as part of her job responsibilities.

108.    FLSA regulations do exempt employees from payment of minimum and overtime wages to the extent the worker is "employed in a bona fide . . . professional capacity[.]" 29 U.S.C. § 213(a)(1).  But, to claim the so-called "professional" exemption, the employer must pay his professional employee on a "salary basis."  *See* 29 C.F.R. § 541.600(a) (so providing).  While certain other professional employees who work in "medical occupations" may be excluded from the "salary basis" requirement, federal regulations specifically exclude pharmacists from that exception.  *See* 29 C.F.R. § 541.600(e) (so providing).  Accordingly, to qualify for the so-called

"professional" exemption under the FLSA, a person employed as a pharmacist must be paid on a salary basis.

109.    Otherwise, FLSA regulations also exempt employees from payment of overtime wages if they meet the criteria of "highly compensated employees," which, relevant to this case, requires that (1) the employee regularly performs professional duties; (2) the employee is paid a "total annual compensation of at least $107,432"; and (3) the employee is paid at least $684 in guaranteed salary per week. *See* 29 C.F.R. §§ 541.601(a)(1), (b)(1).

110.    FLSA regulations define "salary" as compensation paid "on a weekly, or less frequent basis," "without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a) & (a)(1). Specific to the "highly compensated employee" exemption, the Fifth Circuit *en banc* recently reiterated that an employer must still pay such an employee at least the minimum, statutorily required salary, ***and*** that the salary must have a "reasonable relationship" to the amount of wages the employee actually earns:

> [Under] 29 C.F.R. § 541.604(b) . . . "[a]n exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned." So a daily-rate worker can be exempt from overtime – but only "if" two conditions are met: the minimum weekly guarantee condition and the reasonable relationship condition.

*Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 291 (5th Cir. 2021). To the extent a highly compensated employee is either not paid the statutorily required weekly salary, or that the employee's salary does not have a reasonable relationship to total wages earned, the exemption does not apply, and the employee must still be paid minimum and overtime wages under the FLSA *See id.* at 292 (so holding).

111.   The Department of Labor has previously rendered a formal opinion that a reasonable relationship between an employee's guaranteed weekly salary and actual earnings may not exceed a 1:1.5 ratio.  Meaning, that an employer who regularly pays an employee more than 1.5 times his guaranteed salary is not paying that worker wages that have a "reasonable relationship" to his salary; and, in that case, the employer is not entitled to claim any exemption dependent upon paying its worker on a "salary basis."  *See* Dep't of Labor, FLSA 2018-25, *"Reasonable relationship" between salary paid and actual earnings* (Nov. 8, 2018).

112.   In this case, no matter whether Ms. Branch meets the criteria concerning (1) the performance of executive, administrative, and professional duties and (2) the minimum income threshold under the exempt employee test, Ms. Branch was not paid on a "salary basis" as contemplated by the FLSA regulations and as interpreted by the Fifth Circuit in *Hewitt*.

113.   First, Ms. Branch was not paid any salary at all (she was instead paid on an hourly basis).

114.   Second, even if Ms. Branch was paid some guaranteed, minimum salary per week, that salary did not have a reasonable relationship with Ms. Branch's actual earnings of approximately $8,500 per month.

115.   Third and finally, Ms. Branch was not expected to earn the minimum, "total annual compensation" due to a "highly compensated employee" of $107,432 in 2021 even if her pay did have some sort of reasonable relationship to her guaranteed salary.

116.   Accordingly, Ms. Branch was misclassified by CVS as an exempt employee when in reality she was owed minimum and overtime wages under the FLSA.

117.   Accordingly, CVS owes Ms. Branch unpaid overtime pay for the weeks in which she worked an excess of 40 hours, at a rate of 1.5 times Ms. Branch's actual rate of pay.

118.   Upon information and belief, Ms. Branch regularly worked at least 45 hours per week in

each week she was employed by CVS.

119.    Accordingly, CVS is liable to pay Ms. Branch her unpaid overtime wages, totaling approximately $21,527.10, plus liquidated damages equal to the amount of unpaid overtime wages, for total damages under FLSA overtime provisions totaling $43,054.20.  CVS is also liable to pay Ms. Branch's reasonable attorney's fees and costs incurred in this matter.

**B.    Unlawful Failure to Pay Minimum Wages in Violation of the Fair Labor Standards Act against CVS (Individual Claim)**

120.    Ms. Branch states an individual cause of action for unlawful failure to pay minimum wages against CVS under the Fair Labor Standards Act.

121.    Plaintiff incorporates herein all prior allegations of this complaint.

122.    Additionally, under the Fair Labor Standards Act, "[e]very employer shall pay to each of his employees . . . not less than . . . $7.25 an hour . . . ."  29 U.S.C. § 206(a)(1).

123.    Ms. Branch worked more than 37.5 hours per week almost every week of her employment with CVS for approximately 52 weeks.

124.    Upon information and belief, CVS failed to pay Ms. Branch any wages at all for the 2.5 hours of work between 37.5 and 40 hours per week she almost always worked.

125.    Upon information and belief, in total, CVS failed to pay Ms. Branch approximately 145 hours of regular pay during her employment.

126.    At the minimum rate of $7.25 per hour, upon information and belief, CVS owes Ms. Branch at least an additional, approximate $1,051.25 in unpaid regular wages, plus liquidated damages equal to the amount of unpaid minimum wages, for total damages under FLSA overtime provisions totaling $2,102.50.  CVS is also liable to pay Ms. Branch's reasonable attorney's fees and costs incurred in this matter.

**C.**     **Unlawful Failure to Pay Minimum and Overtime Wages in Violation of the Fair Labor Standards Act against CVS (Collective Action Claim)**

127.     Ms. Branch, on behalf of herself and all other employees similarly situated, states a collective cause of action for unlawful failure to pay minimum and overtime wages against CVS under the Fair Labor Standards Act.  29 U.S.C. § 216(b) (providing for collective action by one employee on behalf of herself and other employees similarly situated).

128.     Ms. Branch incorporates herein all prior allegations of this complaint.

129.     Upon information and belief, Ms. Branch is similarly situated to all other staff pharmacists employed by CVS pharmacies within the state of Louisiana because:

- CVS assigns all its Louisiana staff pharmacists substantially identical job descriptions, responsibilities, and duties;

- CVS misclassifies all its Louisiana staff pharmacists as exempt from the minimum and overtime wages provisions under the FLSA when they are actually not exempt;

- CVS pays all their staff pharmacists on an hourly basis (and not a salary basis);

- CVS does not pay any of its staff pharmacists for any hours worked during a week greater than 37.5.

- All of CVS's Louisiana staff pharmacists regularly work more than 40 hours per week but are not paid required minimum or overtime wages for that work;

- CVS does not pay any of its Louisiana staff pharmacists any guaranteed salary at all; or, if any such salary is paid, the salary has no reasonable relationship to actual amount of wages the staff pharmacist earns per week;

- None of CVS's Louisiana staff pharmacists qualify under the FLSA's so-called "medical occupation" exemption as a matter of law;

- Because CVS does not pay any of its Louisiana staff pharmacists on a salary basis – or, even if CVS does, the salary has no reasonable relationship to the actual amount of wages the staff pharmacist earns per week – none of CVS's Louisiana staff pharmacists qualify under the so-called "professional exemption" of the FLSA with respect to non-payment of minimum or overtime wages otherwise due; and,

- The only material issue that differentiates any of CVS's Louisiana staff pharmacist's FLSA claims in this case is the particular number of uncompensated hours the staff pharmacist worked, and how much unpaid compensation that pharmacist is ultimately due.

130.    At the appropriate time, Ms. Branch intends to file a motion with this Court to (1) certify the class of similarly situated employees in this action as all of CVS's current and former Louisiana staff pharmacists for at least the past three years; (2) to require CVS pharmacy to produce a list of all its current and former Louisiana staff pharmacists for at least the past three years along with their full contact information; (3) to require CVS to post a notice of this collective action in a conspicuous place in all current Louisiana CVS pharmacy locations and any other locations in which staff pharmacists work; and (4) to require CVS pharmacy to send an approved notice of this collective action to all its current and former Louisiana staff pharmacists within the class with instructions on how to opt into the class if the class member so desires.

131.    Accordingly, on behalf of herself and all other similarly situated employees, CVS owes all its Louisiana staff pharmacists within the certified class their unpaid minimum and overtime wages for at least the past three years, plus liquidated damages equal to the amount of those unpaid wages, along with the class members' reasonable attorney's fees and costs in this matter.

**D.    Unlawful Failure to Pay Owed Wages under Louisiana Revised Statute 23:631**

132.    Ms. Branch states a cause of action against CVS for her earned but unpaid wages pursuant

to Louisiana's so-called "Last Paycheck Law" codified at La. Rev. Stat. Ann. § 23:631 et seq.

133.    Under La. Rev. Stat. Ann. § 23:631 employers are strictly liable to pay an employee's last paycheck at most 15 days after the termination of their employment for any reason: "Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."

134.    Under La. Rev. Stat. Ann. § 23:632: "any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages."

135.    In Louisiana, vacation time is considered "wages" and, once vacation time has accrued, it is considered the property of the employee. Thus, unused earned time for paid vacation must be paid at termination. *Beard v. Summit Institute of Pulmonary Medicine*, 707 So.2d 1233 (La. Sup. Ct. 1998); La. Rev. Stat. Ann. §§ 23:631, 634, & 636.

136.    First, upon information and belief, and separate and apart from Ms. Branch's unpaid wages claim under the FLSA, Ms. Branch routinely worked more than 37.5 hours in a week, but CVS never paid Ms. Branch for those additional hours worked.

137.    Upon information and belief, Ms. Branch worked approximately 45 hours per week almost every week of her approximate 52 weeks of full-time employment before her constructive discharge, for approximately 382.5 hours of unpaid work.

138.   At Ms. Branch's regular rate of pay of $56.28, CVS thus owes Ms. Branch $21,527.10 in unpaid regular wages under Louisiana state law.

139.   Additionally, at the time of her constructive discharge, Ms. Branch had accrued 64.50 of unpaid vacation time and an additional 8 hours of unpaid "Holiday Float" time to be paid at her regular rate of $56.28, for a total of 72.50 hours of unpaid vacation time worth $4,080.30.

140.   Eventually, after more than 15 days had elapsed after Ms. Branch's constructive discharge, CVS paid Ms. Branch 27 hours of unpaid vacation time (but still owes Ms. Branch 45.5 hours of accrued, unpaid vacation time).

141.   Nevertheless, to date, CVS has failed to pay Ms. Branch both her (1) hourly wages actually due and (2) her accrued vacation time actually due.

142.   Ms. Branch timely and repeatedly demanded payment of her unpaid vacation time, but CVS refused to fully pay Ms. Branch those wages.

143.   More than 90 days has passed since CVS was liable to pay Ms. Branch all her unpaid wages and accrued vacation time in this case.

144.   Accordingly, CVS is strictly liable for the outstanding amount of Ms. Branch's accrued wages and vacation time, plus penalty wages worth 90 days' pay, valued at Ms. Branch's typical earnings of approximately $422.10 per day, for total penalty wages of $37,989.  CVS is also liable to Ms. Branch for her reasonable attorney's fees and costs incurred in this matter.

## RESREVATION OF AMENDMENT

Ms. Branch reserves the right to amend this lawsuit as circumstances warrant.

## JURY DEMAND

Ms. Branch requests a trial by jury on all claims and causes of action asserted and triable by jury in this matter.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Dawn Branch, on behalf of herself and all employees similarly situated, prays that her complaint be deemed good and sufficient; that it and summons be served upon defendant CVS Pharmacy, Inc.; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant providing the following relief:

1.     The entry of a declaratory judgment against defendant declaring that the practices complained of in this complaint are unlawful under the FLSA, and that defendant willfully violated the rights of Plaintiff under the FLSA;

2.     At the appropriate time, and upon motion by Ms. Branch in her representative capacity, to certify a collective action in this matter among the class of CVS's current and former Louisiana staff pharmacists employed at least within the past three years;

3.     An award of unpaid overtime wages under the FLSA to the plaintiff and, to the extent this Court certifies a collective class at the appropriate time, all other similarly situated employees, including unpaid minimum and overtime wages and any negative tax consequence paid or owed by plaintiff associated with these payments;

4.     An award of liquidated damages under the FLSA to the plaintiff and, to the extent this Court certifies a collective class at the appropriate time, all other similarly situated employees, equal to the amount of plaintiff and each similarly situated employee's unpaid minimum and overtime wages;

5.     An award of wages equal to plaintiff's actually accrued and unpaid regular wages and vacation time under the Louisiana Last Paycheck Act;

6.     An award of penalty damages to the plaintiff under the Louisiana Last Paycheck Act, equal to 90 days of plaintiff's average daily earnings at the time of her constructive discharge;

7.     Under the FLSA, an award of reasonable attorney's fees, expert witness fees, costs, and pre-judgment and post-judgment interest incurred in this matter to the plaintiff and, to the extent this Court certifies a collective class at the appropriate time, all other similarly situated employees;

8.     Under the Louisiana Last Paycheck Law, an award of reasonable attorney's fees, expert witness fees, costs, and pre-judgment and post-judgment interest incurred in this matter to the plaintiff;

21

9.    Injunctive relief compelling CVS to correctly classify its Louisiana staff pharmacists as not exempt under the FLSA's minimum and overtime wages provisions, and to pay its staff pharmacists correctly; and,

10.   An award for all other legal and equitable relief to which plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
Alec Szczechowski (Bar #38422)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email: vogeltanz@gmail.com

*Attorneys for Dawn Branch*
*(in her individual and representative capacities)*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAWN BRANCH**

　　　　**Plaintiff,**

　　**v.**　　　　　　　　　　　　　　　　　**CIVIL NO.**

**CVS PHARMACY INC.**

　　　　**Defendant.**

## DECLARATION OF DAWN BRANCH

　　　　I, Dawn Branch, am over the age of 18 years, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing facts are true and correct to the best of my knowledge and recollection:

1.　　　I am the named plaintiff in the lawsuit *Branch v. CVS Pharmacy Inc.*, No. To-Be-Determined, filed contemporaneously in the United States District Court for the Eastern District of Louisiana.

2.　　　I authorized my attorney, Kevin S. Vogeltanz, to file the above captioned original Complaint in this matter.

3.　　　I verify that, at the time of its filing, each allegation of the Complaint was true and correct to the best of my knowledge and recollection.

　　　　I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.  Executed this March 2, 2022.

DocuSigned by:

*Dawn Branch*

DEFC0C930C894BC...

Dawn Branch